UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

GEORGE W. CONWAY
and ELLEN CONWAY,

Debtors.

Case No. 24-10126-7

---

## DECISION ON DEBTORS' MOTION TO CONVERT

George and Ellen Conway ("Debtors") filed a voluntary Chapter 7 petition. Chapter 7 Trustee Brian Hart objected to Debtors' claimed exemptions. The Court held a preliminary hearing on the objection. The parties said they needed time for discovery. The Court set the hearing over and later extended the discovery deadline at the adjourned hearing.

Before a further adjourned hearing, Debtors moved to convert their Chapter 7 case to Chapter 13. Trustee Hart and the United States Trustee objected to conversion. Meanwhile, the Court issued a decision declaring that judgment creditor Greenwich Business Capital, LLC, was unsecured and that it did not hold a valid lien on homestead sale proceeds being held at a title company. The Court scheduled a final evidentiary hearing on Debtors' motion to convert to run concurrently with Trustee Hart's objection to their exemptions. Debtors' motion to convert to Chapter 13 is denied.

### FACTS

George Conway's company borrowed money from Greenwich Business Capital, LLC ("Greenwich") and he guaranteed the loan. That loan went into

default. Anticipating legal action to collect, Mr. Conway consulted his attorney about ways to protect assets in which he had an interest. On March 24, 2023, Mr. Conway quitclaimed his interest in real property at 2201 Mica Road, Madison, Wisconsin (the "Property") to his wife, Ellen Conway.[1] Four days earlier he told the mortgage lender he was transferring his ownership to his wife and that he intended she would "be the sole owner of the property."[2]

Greenwich sued Mr. Conway and his entity Muldoon Dairy, Inc., in Rhode Island state court on May 9, 2023. In furtherance of his goal to delay or avoid any collection by Greenwich and place assets out of its reach, the Quit Claim Deed was recorded with the Dane County Register of Deeds in June 2023.[3] This was all undertaken after Mr. Conway consulted his attorney and, as he testified multiple times, it was "on advice of counsel."

On July 24, Greenwich obtained a default judgment for $248,272.77. Mrs. Conway was not a defendant, and no judgment was granted against her. Greenwich filed a UCC Financing Statement ("UCC") with the Dane County Register of Deeds on August 8 in a flawed attempt to obtain a judgment lien against the Property. The UCC identified Mr. Conway as the Debtor and Greenwich as a secured creditor with an interest in the Property.

Mrs. Conway then sought to sell the Property to a third party, Kristine Devilbiss. The UCC filed by Greenwich was identified as a possible encumbrance. On September 5, as the sole titleholder, Mrs. Conway conveyed

---

[1] Trustee's Exhibits, ECF No. 225, Ex. 1.
[2] *Id.*, Ex. 2.
[3] *Id.*, Ex. 1.

2

her interest in the Property to Ms. Devilbiss. A correction was filed on September 8 to include the conveyance of any interest Mr. Conway might hold in the Property. The UCC was identified in a title commitment as a possible title exception for a possible defect, encumbrance, or adverse matter that could affect the Property.[4] Due to the uncertainty created by Greenwich's UCC, Debtors entered into a Security Indemnity Agreement with Commonwealth Land Title Insurance Company ("Commonwealth"). Net closing proceeds were then held by Commonwealth under this Agreement (the "Funds").

Later, on November 17, 2023, Greenwich docketed the Rhode Island judgment in Dane County Circuit Court. It then pursued various judgment enforcement actions against Debtors and the Funds.

Debtors filed their voluntary Chapter 7 petition on January 24, 2024. On February 7, Debtors filed their schedules and statement of financial affairs, claiming a homestead exemption in the Funds of $150,000 on their Schedule C. Trustee Christopher Seelen, who was initially assigned to the case, conducted the first meeting of creditors on February 26. Debtors filed amended Schedules A/B and C the next day, this time including the $21,000 value of Mrs. Conway's wedding ring. Debtors filed further amended Schedules C and E/F on March 23.

Trustee Seelen discovered a conflict of interest, and Trustee Hart was appointed on April 4. He conducted a continued section 341 meeting and issued a notice of probable assets. Debtors amended their Schedule A/B once

---

[4] Trustee's Exhibits, ECF No. 225, Ex. 8, p. 1

more on May 20 to add roughly $40,000 in stock that was disclosed to Trustee Hart at the continued section 341 meeting.

In mid-June, Trustee Hart initiated three adversary proceedings—against Computershare USA,[5] Charles Schwab & Co.,[6] and Greenwich.[7] The adversary proceedings against Computershare and Charles Schwab sought turnover of stocks, and the proceeding against Greenwich sought a determination that Greenwich wasn't a secured creditor.

Trustee Hart also objected to Debtors' claimed homestead exemption regarding the Funds. In September, Debtors moved to convert their case to Chapter 13 and filed a proposed Settlement Agreement with Greenwich.[8] The settlement Debtors proposed would have paid Greenwich $75,000 and provided it was secured to that amount. The Settlement Agreement also provided that "the parties shall dismiss with prejudice and without costs and fees, Greenwich's objection to exemptions and adversary complaint against the Conways, the Conways counterclaims in the Dane County Circuit Court actions, and Greenwich's claims against Conways, Commonwealth and Devilbiss in Dane County Circuit Court Case No. 23-CV-3203."

In their motion to convert, Debtors state that Trustee Hart has initiated extensive litigation to collect nonexempt assets, and that Debtors feared the administrative costs of liquidating the estate. Debtors argue that their motion

---

[5] Adv. Proc. 24-32.
[6] Adv. Proc. 24-33.
[7] Adv. Proc. 24-34.
[8] Proposed Settlement Agreement, ECF No. 149, p. 3.

4

to convert must be granted absent fraudulent conduct, which, they say, hasn't occurred.

The United States Trustee and Trustee Hart objected to conversion. The U.S. Trustee first notes that the standard is not whether fraudulent conduct has occurred, but whether the motion to convert has been filed in good faith. The U.S. Trustee argues that Debtors haven't filed the motion in good faith and that Debtors cannot fund a Chapter 13 plan based on their schedules.

Trustee Hart agrees with the U.S. Trustee and adds that since administration of the estate is well underway, conversion would only disrupt Trustee Hart's efforts and harm creditors. Based on the recovery of assets and success in challenging the secured status of Greenwich, the Trustee has recovered a total of $274,003.19 including the net proceeds of the sale of the Property. Trustee Hart also claims that Debtors have been uncooperative and failed to produce requested documents.

Debtors replied to the two objections.[9] They generally explain that they initially failed to make certain disclosures because they were unaware of certain assets, such as the stock in a Charles Schwab account. But after they became aware of non-disclosed assets, they cooperated with the Trustee in administration. Debtors also claim that Trustee Hart refused to negotiate a settlement involving Greenwich and Debtors, and that their motion to convert

---

[9] ECF No. 166.

and the proposed Settlement Agreement were a good faith attempt to resolve Greenwich's claim.

The Court held an initial hearing on the motion, then set it over until after the resolution of Trustee Hart's pending adversary proceeding filed against Greenwich. On December 19, 2024, this Court issued a decision determining that Greenwich did not have a valid security interest in the Funds and thus is an unsecured creditor of Debtors. As a result, Debtors' proposed Settlement Agreement with Greenwich was also denied.[10] With the conclusion of the adversary, the Court held a final evidentiary hearing on the objection to exemptions and motion to convert.

At trial, Debtors provided an overview of their finances and ability to fund a Chapter 13 plan. Mr. Conway works part-time as a swimming instructor, and Mrs. Conway works part-time at a kitchen retailer. Their combined total income in 2024 was $94,596.60, which included wages and Social Security. Their income has risen slightly with an increase in Social Security. At the same time, the testimony confirmed there were a number of expenses that were not included in the schedules that more than offset any increase in income.

Their proposed Chapter 13 plan provides for payments of $500 per month for 36 months, then $6,003.48 per month for 24 months, for a total of

---

[10] Meanwhile, Debtors also filed a motion for Trustee Hart to abandon or assume the slander of title claim against Greenwich. ECF No. 185. The Court denied the motion. ECF No. 200.

6

$162,083.52.[11] Debtors testified that they intended to use the non-exempt funds, plus a portion of their anticipated homestead exemption, to make the $6,003.48 monthly payments beginning in month 37.

## DISCUSSION

There is no absolute right to convert a Chapter 7 case to Chapter 13. *Marrama v. Citizens Bank*, 549 U.S. 365, 374 (2007); *see also In re Lesniak*, 208 B.R. 902 (Bankr. N.D. Ill. 1997) ("[N]either the text, the legislative history, nor the case law regarding Section 706(a) grants a debtor a truly absolute right to convert.") (internal citation omitted). Section 706 of the Bankruptcy Code states:

> (a) The debtor may convert a case under [chapter 7] to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title . . . .
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706.

In *Marrama*, the Supreme Court determined that a debtor seeking conversion may not do so if they do not qualify for Chapter 13 under section 109(e) and section 1307(c) of the Bankruptcy Code. 549 U.S. at 372–73 ("fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13" because "[t]hat individual, in other words, is not a member of the class of

---

[11] Debtors' Exhibits, ECF No. 222, Ex. 108.

7

'honest but unfortunate debtors' that the bankruptcy laws were enacted to protect").

Section 1307(c) states that a Chapter 13 case may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of ten causes justifying that relief. The Court in *Marrama* noted that a debtor's bad-faith conduct may also constitute cause for dismissal or conversion. 549 U.S. at 368, 370–71.

> [T]he broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

*Marrama*, 549 U.S. at 375 (footnotes omitted).

Courts ultimately look at the totality of the circumstances to determine whether a debtor has acted in good faith. *In re Holt*, 589 B.R. 644 (Bankr. S.D. Ind. 2018). Courts consider whether the debtor has stated debts and expenses accurately, made any fraudulent representation to mislead the court, unfairly manipulated the Bankruptcy Code, and the debtor's motive in moving to convert. *See In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992); *In re Killian*, 529 B.R. 257, 263 (C.D. Ill. 2013); *In re Johnson*, 228 B.R. 663, 668–69 (Bankr. N.D. Ill. 1999).

Apart from considering good faith, courts also look at: whether the debtor can propose a confirmable Chapter 13 plan; the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by

8

allowing conversion; the effect of conversion on the efficient administration of the bankruptcy estate; and whether conversion would result in an abuse of the bankruptcy process. *In re Campbell*, 598 B.R. 775, 778–79 (Bankr. M.D. Pa. 2019), *aff'd sub. nom. Campbell v. Conway*, 611 B.R. 38 (M.D. Pa. 2020). Conversion may also be denied when a debtor is "not motivated by a desire to repay [their] debts [or] to provide a greater dividend to creditors" and conversion "is simply an attempt by the debtor to evade his obligations under chapter 7[.]" *In re Alcantar*, No. 19 B 24926, 2021 WL 4192680, at *4–5 (Bankr. N.D. Ill. Sept. 10, 2021) (citing *In re Lesniak*, 208 B.R. at 905).

Debtors have not demonstrated good faith in moving to convert. In their initial Schedule A/B filed on February 7, 2024, Debtors did not disclose stock and investment accounts valued by Debtors at $40,000. Debtors did not schedule the stock and investment accounts until May 20, in their second amendment to Schedule A/B, after the assets were discovered by the Trustee during the creditors' meeting on April 8. Debtors' counsel tries to seek credit for the eventual disclosure of the stock, arguing that Trustee Hart would have never discovered the stock "without the blurting out disclosure"[12] at the initial meeting of creditors. But that's exactly the point: Trustee Hart would never have discovered the stock if he hadn't asked the right questions because Debtors didn't voluntarily disclose the assets. *See also Marrama*, 549 U.S. at

---

[12] Debtor's Reply in Support of Motion to Convert, ECF No. 166, p. 5.

370 (explaining bankruptcy court ruling that "there is no 'Oops' defense to the concealment of assets").

Next, Debtors' motive in seeking conversion appears to be to prevent Trustee Hart from administering non-exempt assets. In their motion, Debtors say that Trustee Hart "has initiated extensive Litigation to collect non-exempt assets and extensive litigation with [Greenwich] over entitlement to funds held by Commonwealth Land Title Insurance Company," and that "Debtors are faced not only with litigation against [Greenwich] but also the Chapter 7 Trustee."[13]

Greenwich was not a secured creditor. It asserted a secured claim in the amount of $282,207.14.[14] Debtors took no action to challenge the Greenwich claim. Instead, it appears they were more concerned about the resolution of a nondischargeability claim asserted by Greenwich.

And collecting and administering assets is squarely within Trustee Hart's duties under the Code. 11 U.S.C. § 704(a). The fact that the Trustee initiated litigation against Debtors (presumably meaning Trustee Hart's objection to their claimed exemptions) is not an appropriate reason to seek conversion to Chapter 13. Trustee Hart is objecting to Debtors' exemptions to maximize the value of the estate, which is pursuing the best interest of creditors.

Further, while it's clear that Greenwich was not secured, Debtors simply sat back awaiting a decision on the Trustee's suit against Greenwich. They also

---

[13] Motion to Convert, ECF No. 144.
[14] Claims Register, Claim No. 7-1

sought to settle their dispute with Greenwich by agreeing it was secured and paying it $75,000. Even after this Court ruled that Greenwich was not secured, Debtors did not withdraw their motion to approve the settlement with Greenwich.

Nor do Debtors appear to be able to fund a feasible Chapter 13 plan. In their exhibits, Debtors include a plan which includes payments of $500 per month for 36 months, then payments of $6,003.48 per month for 24 months.[15] Apart from the anticipated return of the Funds, there is no evidence Debtors can afford payments of $6,003.48 per month for 24 months.

Debtors scheduled disposable income of $1,016 per month.[16] But at trial, they testified to some changes in this amount. They have a slightly higher income; Mrs. Conway said that her Social Security income has risen from $1,159 per month to about $1,300.

Yet there are also significant monthly expenses that were omitted from the schedules that more than offset any increase in income. The expenses include more than $100 for cell phone payments, $218.25 for streaming services and entertainment, $100 for internet, $200 for out-of-pocket medical expenses, about $200 for dental and vision expenses, and $122 for gas for their vehicle. Mrs. Conway also said they pay about $975 per month for food and housekeeping (versus $700 scheduled), $325 per month in health insurance ($260 scheduled), and $361 per month for vehicle insurance ($200 scheduled).

---

[15] Debtors' Exhibits, ECF No. 222, Ex. 108.
[16] ECF No. 22.

These additional and increased expenses substantially change the picture of Debtors' monthly disposable income, leaving them with next to nothing to pay into a hypothetical Chapter 13 plan.

In other words, if the increased Social Security is added to the disposable income and the expenses are adjusted for omissions, increases, and decreases from the schedules, the budget is negative by $154.25. There is nothing left to fund a plan from income. The only possible funds are the sums that have been gathered by the Trustee.

Debtors' most recent Schedule A/B states they have $321,062.71 in assets.[17] Their Schedule D lists one secured creditor, UW Credit Union, with a claim of $19,341.[18] Their most recent Schedule C lists five claimed exemptions in the total amount of $173,950.[19] This includes $150,000 for the homestead exemption. But it also inaccurately claims a $21,000 exemption for Mrs. Conway's wedding ring under the wildcard exemption of Wis. Stat. § 815.18(3)(d), even though the wildcard is limited to $12,000.

So, their total assets (minus UW Credit Union's secured claim) equal $302,062.71, and their total claimed exemptions are $173,950 (which includes the full $150,000 homestead, and the inappropriately claimed $21,000

---

[17] ECF No. 74. This total amount is different than what Debtors state. However, Debtors' total calculation includes an incorrect vehicle total amount, and a slander of title claim against Greenwich they value at $250,000.

[18] ECF No. 22. UWCU's collateral is described as "500 West Verona Avenue #412," which is the address for a Subway sandwich shop. But the value of the collateral is listed as $19,000, which matches the value of their 2017 Honda CRV, and thus seems to be the true collateral.

[19] ECF No. 36.

exemption for the ring). Thus, they would have to pay at least $128,112.71 to satisfy the best interest of creditors test under Code section 1325(a)(4).

Summarized, a comparison of the various amounts that could be available to creditors in a Chapter 13 versus the current Chapter 7 is:

| | |
|---|---|
| Proposed Plan | $162,083.52 |
| Schedules to meet best interests test | $128,112.71 |
| Difference | $ 33,970.81 |
| Ch 7 Assets Collected without exemptions | $274,003.19 |
| Proposed Plan | $162,083.52 |
| Difference | $111,919.67 |
| Ch 7 Assets Collected with $75,000 exemption | $199,003.19 |
| Proposed Plan | $162,083.52 |
| Difference | $ 36,919.67 |
| Ch 7 Assets Collected with $150,000 exemption | $124,003.19 |
| Proposed Plan | $162,083.52 |
| Difference | ($ 38,080.33) |
| Plus $75,000 Mr. Conway says will be contributed | $ 36,919.67 |
| Best Interests test per schedules | $128,112.71 |
| Proposed Plan | $162,083.52 |
| Ch 7 Funds Collected minus $75,000 | $199,003.19 |
| No exemptions | $274,003.19 |

While the plan might suggest that payments to creditors would be greater than the minimum required to satisfy the best interests test based on the schedules, that is not the end of the analysis. Even if Debtors each had a homestead exemption, the distribution to creditors would exceed the amount

13

required to meet the best interests of creditors. On conversion, Debtors remain in possession of all property of the estate. 11 U.S.C. § 1306(b). Moreover, if Debtors convert to a Chapter 13, there's no guarantee any of those funds would be available to contribute to a Chapter 13 plan three years from now.

Debtors are currently renting an apartment. At trial, Debtors said they intended to use the Funds to reinvest in another homestead. If they bought another house, they would not have the money to pay more than $6,000 per month into a Chapter 13 plan, let alone make any payments from earnings given the updated income and expenses.

There is also a Bankruptcy Code consideration at play. The present value of payments is a consideration under 11 U.S.C. § 1325(a)(4). This section says the court shall confirm a plan if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date."

This contemplates consideration of the present value of payments. Present value recognizes the time value of money. The legislative history of section 1325 suggests this conclusion, specifically referring to present value. 124 Cong. Rec. H 11,107 (Sept. 28, 1978); S. 17,1423 (Oct. 6, 1978). "[V]alue, as of the effective date of the plan" is used repeatedly in the Code. *See* 11 U.S.C. § 1325(a)(4), (a)(5)(B)(ii), and (b)(1)(A); *see also* section 1129(a)(7), (a)(9)(B) and (C), and (a)(15); section 1225(a)(4), (a)(5)(B)(ii), and (b)(1)(A). While

14

most cases discussing present value do so in the context of treatment of secured claims, the phrase is the same as it relates to unsecured claims as well.

The understanding that the present value of future distributions accounts for the time value of money is well established as confirmed by the Supreme Court. *Till v. SCS Credit Corp.*, 541 U.S. 465, 486–87 (2004) ("The requirement that the 'value' of the property to be distributed be determined 'as of the effective date of the plan' incorporates the principle of the time value of money.") (Thomas, J., concurring); *see also id.* at 473–74 (Stevens, J.). The time value of money is a basic financial concept that holds that money in the present is worth more than the same sum of money to be received in the future. The present value of a future stream of payments is determined by discounting the future value by an estimated rate of return that the money could earn if invested. In other words, it is the amount of money that would be needed today to have the same future value, given a specific assumed interest rate on the money today. Money received today is generally more beneficial than money received in the future.

Even without a discount, creditors will receive more in a Chapter 7 with or without a $75,000 exemption than is proposed under the plan. Regardless of the interest rate used in a present value calculation, it is probable that creditors would receive more even if both Debtors were entitled to a homestead exemption.

Finally, the impact on Debtors of denying conversion weighed against the prejudice to creditors caused by allowing conversion favors creditors and must be considered. *See In re Campbell*, 598 B.R. at 778–79. Trustee Hart is well underway in administering the estate. To date, he has successfully prosecuted three adversary proceedings, recovering $46,686.67 to benefit creditors. And he has avoided the allegedly secured claim of Greenwich and obtained the release of the Funds held by Commonwealth in the amount of $227,316.52. This is all to the benefit of creditors and Debtors. The remaining question is simply the amount—subject to this Court's determination of Debtors' claimed homestead exemptions—available for distribution by the trustee.

In total, Trustee Hart has already liquidated $274,003.19 to benefit creditors and the estate. Distribution to creditors in the Chapter 7 case would occur more expeditiously and quicker than in the proposed Chapter 13 60-month plan because Trustee Hart can begin distributions as soon as the exemption objection is resolved. In fact, Trustee Hart testified that he could feasibly wrap up the case before the end of this calendar year. In Debtors' proposed Chapter 13 plan, however, creditors would need to wait to receive distributions over five years in monthly installments.

## CONCLUSION

The Motion to Convert is denied.

This decision shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: May 9, 2025

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge